USDC- BALTIMORE
'25 DEC 11 PM 12:33

Rcv'd by: ___

HD

JRR 25 CV 4071

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**NADIA BROWN-HYATT,**
Plaintiff,

v.   Civil Action No. _____

**FAIRWAY INDEPENDENT MORTGAGE CORPORATION,**
Defendant.

---

## COMPLAINT FOR FRAUD IN THE INDUCEMENT, BREACH OF CONTRACT, NEGLIGENT MISREPRESENTATION, UNFAIR TRADE PRACTICES, CIVIL RICO VIOLATIONS, AND RESCISSION

Plaintiff Nadia Brown-Hyatt ("Plaintiff"), appearing pro se, brings this action against Defendant Fairway Independent Mortgage Corporation ("Fairway") for perpetrating a fraudulent scheme at the origination of a mortgage loan that deceived Plaintiff into executing loan documents with a stranger to the contract, has resulted in substantial damages, and constitutes a pattern of racketeering activity under federal law. The loan transaction is void ab initio due to fraud and mutual mistake, and Plaintiff seeks rescission of all fraudulent instruments and recovery of all payments made.

---

### I. NATURE OF THE ACTION

1. This is an action for **fraud in the inducement at origination**—a scheme to deceive Plaintiff into executing a promissory note and deed of trust by false and material misrepresentation of the lender's identity, resulting in a contract with a stranger without Plaintiff's knowledge or consent.

2. In September 2021, Defendant Fairway represented itself as Plaintiff's "Lender" on all loan documents, including the promissory note, deed of trust, and Maryland-required disclosures.

3. This representation was materially false. Fairway did not lend Plaintiff a single dollar. As documented in Fairway's own internal funding worksheets, Wells Fargo Bank provided

100% of the loan funds via interstate wire transfer—a fact previously concealed from Plaintiff.

4. **Most critically, Fairway fraudulently induced Plaintiff to execute loan documents that purported to create a contractual obligation to Wells Fargo Bank—a stranger Plaintiff never agreed to contract with, never signed documents with, and never consented to owing any obligation to.** Plaintiff believed she was contracting solely with Fairway. The concealment of Wells Fargo's true identity as the actual creditor prevented any meeting of the minds and rendered the transaction void ab initio.

5. This fraud involved interstate commerce. Wells Fargo's wire transfer of $319,319.07 originating from outside Maryland to execute this fraudulent scheme demonstrates federal involvement in the origination process and invokes federal jurisdiction under 28 U.S.C. § 1331.

6. To conceal this fraud and facilitate the immediate sale of the loan to secondary market investors, Fairway's employee, Brielle Morgan, endorsed the promissory note 'Without Recourse.' This endorsement demonstrates Fairway's specific intent to defraud: it originated a defective loan and immediately disclaimed all liability to shift the risk to investors before the fraud could be discovered.

7. Fairway deliberately concealed the endorsed note by producing only an unendorsed version in response to a state court subpoena, while withholding the true endorsed version. This concealment prevented Plaintiff from understanding her rights and remedies until years after the loan closed.

8. This initial fraud at the origination poisoned the entire transaction and constitutes extrinsic fraud that prevented Plaintiff from discovering that she had been fraudulently bound to a stranger and from asserting her rights against Fairway.

9. Fairway's fraudulent scheme is part of a pattern and practice of racketeering activity, involving interstate wire transfers, mail fraud, and systematic deception of borrowers and investors. This pattern of conduct violates the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

10. **Fraud vitiates all contracts formed through deception. Under Maryland law, a contract induced by fraud as to the identity of an essential party is void ab initio, not merely voidable.**

11. This Complaint seeks to hold Fairway accountable for that original fraud, to recover damages for the losses resulting from the fraud, to obtain treble damages for racketeering violations, to rescind the fraudulent instruments, to return all payments made, and to prevent Fairway from profiting from its deception. This is an action against Fairway for fraud committed at the origination of the loan in September 2021.

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under **28 U.S.C. § 1331** (federal question jurisdiction) because Plaintiff's claims arise under federal law involving:

    - Fraud affecting interstate commerce, specifically wire fraud occurring through Wells Fargo's interstate transfer of loan funds in furtherance of Fairway's fraudulent scheme;
    - Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), involving predicate acts of wire fraud and mail fraud.

13. Alternatively, this Court has subject matter jurisdiction under **28 U.S.C. § 1332** (diversity jurisdiction). Plaintiff is a citizen of Maryland. Defendant Fairway is a corporation organized under the laws of Wisconsin with its principal place of business in Wisconsin. The amount in controversy exceeds $75,000, exclusive of interest and costs.

14. Venue is proper in this District under **28 U.S.C. § 1391(b)** because a substantial part of the events giving rise to the claims occurred in this District, Plaintiff resides in this District, and the property affected by the fraudulent loan is located in this District.

## III. THE PARTIES

15. Plaintiff Nadia Brown-Hyatt is an individual and resident of Baltimore, Maryland. In September 2021, Plaintiff was the owner of property located at **3707 Liberty Heights Avenue, Baltimore, MD 21215** (the "Property").

16. Defendant Fairway Independent Mortgage Corporation is a corporation organized and existing under the laws of Wisconsin, with its principal place of business located in Madison, Wisconsin. Fairway is licensed to conduct mortgage lending business in Maryland and held itself out as a mortgage lender in connection with Plaintiff's loan. Fairway participated in a fraudulent scheme involving interstate wire transfers, mail fraud, and systematic loan origination practices designed to conceal the true identity of the contracting parties and Fairway's own liability.

## IV. FACTUAL ALLEGATIONS

### A. **The Fraudulent Loan Origination (September 2021)**

17. In or around September 2021, Plaintiff sought to purchase the Property, 3707 Liberty Heights Avenue, Baltimore, MD 21215.

18. Defendant Fairway presented itself as the lender and provided Plaintiff with loan documents identifying Fairway as the "Lender."

19. On or about September 20, 2021, Plaintiff signed a promissory note in the principal amount of $323,000, payable to **Fairway Independent Mortgage Corporation**. (Exhibit A - Promissory Note).

20. Plaintiff also executed a Deed of Trust securing the note, again naming Fairway as the lender and beneficiary.

21. All Maryland-required loan disclosures identified Fairway as the 'Lender/Broker,' yet Fairway never disclosed it was acting solely as a broker with Wells Fargo as the actual funding source. (Exhibit B - Maryland Net Proceeds Authorization).

22. **These representations were made with intent to induce Plaintiff to enter into the transaction. Fairway knew these representations were false, or acted with reckless disregard for their truth.**

23. Plaintiff reasonably relied on these representations. A borrower encountering loan documents identifying a lender as "Fairway Independent Mortgage Corporation" would justifiably believe Fairway was the source of funds and her sole contractual obligor.

24. Plaintiff believed she was borrowing money from Fairway and entering into a contractual relationship with Fairway alone.

25. This was a lie.

### B. **Wells Fargo Provided 100% of the Loan Funds via Interstate Wire Transfer**

26. In response to a subpoena issued during state court proceedings, Fairway produced over 1,000 pages of documents, including internal funding worksheets.

27. These worksheets reveal that **Wells Fargo Bank was the "Funding Source/Warehouse Bank"** and provided **100% of the loan proceeds—specifically, $319,319.07—via interstate wire transfer** originating from outside Maryland. (Exhibit C - Fairway Funding Worksheet).

28. This wire transfer constitutes interstate commerce. The transfer of funds across state lines via electronic means to execute Fairway's fraudulent loan scheme invokes federal jurisdiction under 28 U.S.C. § 1331 and constitutes a predicate act of wire fraud under 18 U.S.C. § 1343.

29. Fairway's contribution to the loan: **$0.00**.

30. Fairway acted merely as a loan originator or broker, not as a lender. Yet **nowhere in the transaction was Plaintiff informed that Wells Fargo was the actual source of funds.**

31. Plaintiff never signed any documents with Wells Fargo. Plaintiff never agreed to borrow money from Wells Fargo. Plaintiff never consented to owing Wells Fargo any obligation.

32. **The misrepresentation of lender identity is a material fact that goes to the heart of the transaction.** The identity of one's contractual obligor—the entity to whom repayment is owed—is fundamental to any lending transaction. Had Plaintiff known that Fairway was merely a broker and that Wells Fargo was the true lender, she would not have entered into the loan on the terms presented, or she would have negotiated different terms with full knowledge of the true parties.

33. Fairway's silence regarding the true funding source and Wells Fargo's role constitutes fraudulent concealment and material omission of a fact that Fairway knew Plaintiff did not know and that Fairway knew was material to Plaintiff's decision.

### C. Fairway Fraudulently Induced Plaintiff to Contract with a Stranger—Wells Fargo—Without Consent or Knowledge

34. Fairway's misrepresentation of lender identity resulted in Plaintiff unknowingly contracting with a stranger—Wells Fargo Bank—without Plaintiff's knowledge, consent, or agreement. Plaintiff never intended to borrow money from Wells Fargo, never agreed to be bound to Wells Fargo, and never consented to Wells Fargo holding a security interest in the Property. The most fundamental element of any contract is mutual assent—a "meeting of the minds" on the essential terms, including the identity of the contracting parties. Here, there was no mutual assent. Plaintiff believed she was contracting with Fairway, and Fairway fraudulently concealed that the actual creditor was Wells Fargo. Under Maryland law, a contract induced by fraud as to the identity of

an essential party is void ab initio, not merely voidable. This is not a case of a minor misrepresentation; this is a case of fundamental mistake as to the identity of the obligee, rendering the entire transaction a nullity.

35. Maryland law is clear: "Where there is no meeting of the minds, there is no contract." *See Lloyd v. General Motors Corp., 916 A.2d 257 (Md. 2007)*. Here, Plaintiff's mind never met with Wells Fargo's. Plaintiff was fraudulently induced to believe she was contracting solely with Fairway. Wells Fargo was a hidden, undisclosed principal whose identity was material to the transaction. Because Plaintiff never agreed to contract with Wells Fargo, the promissory note and deed of trust are void for lack of mutual assent. A void contract produces no legal obligations and cannot support any actions or claims.

35A. Fairway may attempt to defend its conduct by characterizing Wells Fargo as merely a "warehouse bank" providing temporary funding. This defense is an admission of the fraud. If Wells Fargo provided 100% of the loan funds through a warehouse lending arrangement, then Fairway was acting as a broker or loan originator—not as a lender. Maryland law, RESPA, and TILA require brokers to disclose their true role and the identity of the actual creditor. Fairway deliberately concealed this arrangement by identifying itself as the "Lender" on all loan documents, preventing Plaintiff from understanding that Fairway was merely a middleman earning fees by brokering Wells Fargo's funds. Had Plaintiff known Fairway was merely brokering a warehouse-funded loan, Plaintiff would have demanded disclosure of all warehouse terms, negotiated different loan terms, or declined the transaction. The concealment of the warehouse lending arrangement is not a defense to fraud—it is evidence of fraud.

### D. Fairway Endorsed the Note "Without Recourse" to Facilitate the Fraudulent Scheme

36. To process and transfer this fraudulent loan, a Fairway employee, Brielle Morgan (Mortgage Shipping Specialist/Collateral Inventory Control), endorsed the promissory note. Public records and employment verification confirm that Brielle Morgan was employed by Fairway at all relevant times and acted within the scope of her employment.

37. The endorsement on the note reads: **"Pay to the order of Fairway Independent Mortgage Corporation,"** followed by Brielle Morgan's signature. (Exhibit D - Endorsed Promissory Note).

38. While a "Without Recourse" endorsement typically limits an endorser's liability under UCC § 3-415(b), here it serves as definitive evidence of Fairway's scienter (intent to defraud).

39. Fairway knew it had originated a loan using funds from an undisclosed stranger (Wells Fargo) rather than its own funds as represented. Fairway knew this material misrepresentation rendered the loan defective.

40. Consequently, Fairway deliberately used a "Without Recourse" endorsement to immediately disclaim all liability for the defects it created. By endorsing "Without Recourse," Fairway sought to wash its hands of the fraud and shift the risk of the defective instrument onto the secondary market and unsuspecting investors before the borrower or investor could discover the misrepresentation.

41. This "Without Recourse" endorsement is a hallmark of the "loan mill" scheme alleged herein: originate a fraudulent loan, immediately disclaim liability, and sell it for profit before the fraud is discovered.

42. Furthermore, despite endorsing the note "Without Recourse," Fairway remained bound by the transfer warranties under UCC § 3-416, which warrant that "all signatures on the instrument are authentic and authorized" and that "the transferor is entitled to enforce the instrument." By originating the loan through fraud and creating a void ab initio contract, Fairway breached these warranties the moment it transferred the note, regardless of the "Without Recourse" stamp.

### E. Fairway Deliberately Concealed the Endorsed Note—Evidence of Extrinsic Fraud

43. Critically, when Fairway responded to the state court subpoena and produced over 1,000 pages of documents, **it deliberately failed to produce the endorsed version of the promissory note.**

44. Instead, Fairway produced only a redacted copy of the unendorsed version (Exhibit A), concealing the evidence of its own contractual liability. This act of deliberate concealment constitutes bad faith, demonstrates Fairway's knowledge of its liability, and evidences Fairway's intent to evade responsibility.

45. This act of deliberate concealment constitutes bad faith, demonstrates Fairway's knowledge of its liability, and evidences Fairway's intent to evade responsibility.

46. **This concealment is extrinsic fraud** under Maryland law. It prevented Plaintiff from understanding the true nature of the transaction and her rights against Fairway until the endorsed version was discovered years later when a third party, TH MSR Holdings, LLC, produced it during unrelated foreclosure proceedings. Plaintiff is not challenging the

foreclosure itself; the proceeding was merely the circumstance in which Plaintiff finally discovered evidence of Fairway's fraud and concealment.

47. Had Plaintiff discovered at the time of origination that Fairway had endorsed the note, making Fairway contractually liable for the debt, Plaintiff would have understood that she had a direct claim against Fairway and would have exercised her rights differently.

48. Plaintiff discovered the endorsed version only after years had passed and only when produced by a third party in unrelated proceedings, years after the opportunity to assert her claims had been obscured.

49. Fairway's concealment is part of the overarching fraud scheme: misrepresent lender identity, obtain the borrower's signature, endorse the note to create liability, conceal that liability, then sell the fraudulent instrument into the secondary market before the borrower could discover the truth.

### F. The Note Was Immediately Transferred—Demonstrating Predatory Intent and Pattern

50. Fairway's internal records show that immediately after closing, on or about September 24, 2021, the promissory note was shipped to **"Investor: Holding FNMA/FHLMC,"** referring to Fannie Mae (Federal National Mortgage Association) or Freddie Mac (Federal Home Loan Mortgage Corporation), government-sponsored enterprises that purchase loans in the secondary market. (Exhibit E - Note Shipment Request).

51. This shipment constitutes mail fraud under 18 U.S.C. § 1341, as it involves using the mail or interstate carriers to send a fraudulent document (the note) to accomplish the scheme.

52. This immediate transfer demonstrates that Fairway never intended to hold the loan or bear the risk of default. The loan was originated for the sole purpose of being immediately sold into the secondary market—a classic "loan mill" scheme designed to originate fraudulent loans quickly and offload them before liability could be discovered.

53. Fairway's origination of the loan with the immediate intent to sell it, combined with the fraudulent misrepresentation of lender identity and the concealment of the endorsement, demonstrates that Fairway's fraud was deliberate, systematic, and designed to isolate Fairway from accountability.

54. The pattern of conduct—misrepresenting lender identity to borrowers, using interstate wires to fund fraudulent loans, shipping fraudulent notes via mail to investors, concealing

Fairway's own liability, and immediately offloading fraudulent instruments—constitutes a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

### G. Plaintiff Confronted Fairway and Was Ignored

55. On April 22, 2025, Plaintiff sent a detailed letter to Fairway, explicitly challenging the warehouse lending arrangement, the undisclosed Wells Fargo funding, the unauthorized endorsement, and the concealment of the endorsed note. (Exhibit F - April 22, 2025 Letter to Fairway).

56. Plaintiff's letter demanded:

   - The complete Wells Fargo warehouse lending agreement;
   - All assignment, transfer, and endorsement documentation;
   - Accounting records showing fund allocation;
   - Loan-level accounting ledgers;
   - IRS reporting documents related to the note;
   - Documentation of Brielle Morgan's authority to endorse the note; and
   - An explanation of why Fairway concealed the endorsed note.

57. Fairway completely ignored this letter. Fairway has refused to respond, refused to provide any of the requested documents, and refused to acknowledge its liability.

58. This silence constitutes consciousness of guilt and an implicit admission that Fairway cannot defend its conduct.

### H. Damages Resulting from the Fraud

59. As a direct and proximate result of Fairway's fraud at origination, Plaintiff has suffered substantial damages:

   - **Loss of home and equity:** Plaintiff was the owner of the Property at 3707 Liberty Heights Avenue, valued at approximately $400,000+ at the time of origination. Due to the fraudulent loan encumbering the Property, the Property was later foreclosed upon and transferred to a third party. Plaintiff lost all ownership rights and all equity in the Property, valued at approximately $100,000+.

   - **Financial damages:** Plaintiff made mortgage payments on a loan induced by fraud and purportedly created with a stranger, representing thousands of dollars paid toward a debt she never validly agreed to incur under a void contract.

- **Loss of housing stability:** Plaintiff lost her home, her housing security, and her ability to build equity through homeownership.

- **Emotional and psychological injury:** Plaintiff has suffered substantial emotional distress, mental anguish, anxiety, and psychological trauma as a result of losing her home due to fraud perpetrated at the origination of the loan.

- **Reputational harm and credit damage:** The fraudulent loan and subsequent actions damaged Plaintiff's credit and reputation, affecting her ability to obtain housing, credit, and employment.

- **Economic instability:** Plaintiff has suffered economic losses and financial instability as a result of the loss of her primary asset and years of litigation.

60. **Fairway's conduct was willful, malicious, and undertaken with reckless disregard for Plaintiff's rights.** The scheme of misrepresenting lender identity, concealing the true funding source, concealing the endorsement, endorsing the note to create liability, and immediately selling the fraudulent instrument into the secondary market, demonstrates deliberate deception designed to profit at Plaintiff's expense. Such conduct warrants punitive damages to punish Fairway and deter similar conduct.

## V. COUNTS FOR RELIEF

### COUNT I: FRAUD IN THE INDUCEMENT

61. Plaintiff incorporates all prior allegations as if fully set forth herein.

62. Defendant Fairway made material misrepresentations of fact to Plaintiff at the time of loan origination, specifically:

- That Fairway was the lender providing the loan funds;
- That Plaintiff was borrowing money from Fairway;
- That Plaintiff's contractual obligation was solely to Fairway;
- That all loan documents accurately identified the lender;
- That Fairway would hold the loan or bear the ongoing risk of the loan;
- That Wells Fargo's involvement was merely as a funding source and not as a hidden contracting party to whom Plaintiff would owe an obligation.

63. These representations were false. Wells Fargo, not Fairway, provided 100% of the loan funds via interstate wire transfer. Fairway's role was limited to loan origination or brokerage, and Fairway immediately sold the loan into the secondary market. Wells Fargo became the hidden, undisclosed principal to whom Plaintiff unknowingly owed obligations.

64. **Fairway made these representations with knowledge of their falsity and with reckless disregard for the truth.** Fairway controlled the loan origination process, prepared the loan documents, and held internal funding worksheets proving Wells Fargo was the source. Fairway knew the representations were false when made.

65. **Fairway made these representations with the specific intent to induce Plaintiff to enter into the loan transaction, execute the promissory note, and execute the deed of trust.** The entire origination process was designed to obtain Plaintiff's signature on instruments naming Fairway as lender while concealing that Plaintiff was actually contracting with Wells Fargo.

66. Plaintiff justifiably relied on Fairway's representations. A reasonable borrower would rely on loan documents identifying the lender, on disclosures identifying the lender/broker, and on the face of the promissory note identifying the payee.

67. **Plaintiff's reliance was induced by Fairway's fraud.** Plaintiff had no reason to suspect that a lending company presenting loan documents and closing a transaction would misidentify the source of funds, conceal the true contracting party, or induce her to sign a contract with a stranger. Reliance on a lender's representations about the lender's identity is the very definition of justifiable reliance.

68. As a direct and proximate result of Fairway's fraud, Plaintiff has suffered the substantial damages described in Section IV.H, including the loss of her home, loss of equity, financial damages, emotional distress, reputational harm, and economic instability.

69. **Fairway's conduct was willful, wanton, and malicious.** Such conduct warrants punitive damages to punish Fairway and deter similar conduct.

**WHEREFORE, Plaintiff demands judgment against Fairway for:**

- Compensatory damages in an amount to be proven at trial;
- Punitive damages in an amount sufficient to punish and deter;
- All other relief the Court deems just.

## COUNT II: NEGLIGENT MISREPRESENTATION

70. Plaintiff incorporates all prior allegations as if fully set forth herein.

71. Defendant Fairway owed Plaintiff a duty to accurately represent material facts regarding the loan transaction, including the identity of the lender, the source of loan funds, Fairway's actual role in the transaction, and the true identity of all parties to the contract. This duty arose from Fairway's status as a licensed mortgage originator in Maryland and from the fiduciary relationship inherent in a lender-borrower interaction.

72. Fairway negligently and carelessly misrepresented itself as the lender when it knew or should have known that Wells Fargo was the actual source of funds and that Fairway's role was limited to loan origination or brokerage.

73. Fairway's conduct fell below the standard of care expected of a licensed mortgage originator in Maryland, which includes accurate disclosure of the true lender, funding source, and all material parties to the transaction.

74. Plaintiff justifiably relied on these misrepresentations to her detriment. Had Plaintiff known the true identity of the lender and the true contracting parties, she would not have signed the loan documents on the terms presented.

75. As a direct and proximate result of Fairway's negligent misrepresentation, Plaintiff has suffered substantial damages as described in Section IV.H.

**WHEREFORE, Plaintiff demands judgment against Fairway for:**

- Compensatory damages in an amount to be proven at trial;
- All other relief the Court deems just.

## COUNT III: UNJUST ENRICHMENT

76. Plaintiff incorporates all prior allegations as if fully set forth herein.

77. Defendant Fairway received substantial benefits from the fraudulent loan transaction, including:

- Origination fees;
- Broker fees;

- Processing fees;
- Underwriting fees;
- Closing fees;
- Yield spread premiums;
- Compensation from secondary market investors for selling the loan; and
- Other consideration.

78. Fairway obtained these benefits through fraud, material misrepresentation, and concealment. Fairway misrepresented itself as the lender, concealed the true source of funds, concealed the true contracting party (Wells Fargo), hid the endorsement making Fairway liable, and then sold the fraudulent instrument to secondary market investors—all while keeping the fees generated from the fraudulent transaction.

79. Fairway knew or should have known that these benefits were obtained through deceptive practices, that Plaintiff was harmed in the process, and that Plaintiff never consented to contract with Wells Fargo.

80. It would be unjust and inequitable for Fairway to retain these ill-gotten benefits while Plaintiff has lost her home and suffered the damages described in Section IV.H.

81. Plaintiff is entitled to recover all fees, compensation, and benefits received by Fairway in connection with the fraudulent loan.

**WHEREFORE, Plaintiff demands judgment requiring Fairway to:**

- Disgorge all fees, compensation, and benefits received in connection with the fraudulent loan;
- Pay such amounts, together with interest, to Plaintiff;
- Provide an accounting of all compensation received;
- Pay costs and attorney's fees.

## COUNT IV: UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER MARYLAND CONSUMER PROTECTION ACT

82. Plaintiff incorporates all prior allegations as if fully set forth herein.

83. Defendant Fairway, in the course of engaging in consumer transactions in Maryland, engaged in unfair and deceptive trade practices in violation of **Maryland Code § 13-101 et seq.** (the Maryland Consumer Protection Act, "MCPA").

84. Fairway engaged in unfair and deceptive practices including:

- Misrepresenting that Fairway was the lender providing the loan funds when Fairway provided $0 of the $319,319.07 in loan funds;
- Failing to disclose that Wells Fargo was the true source of loan funds and the actual contracting party;
- Failing to disclose Fairway's actual role as a loan originator or broker rather than lender;
- Failing to disclose that the promissory note had been endorsed by Fairway, creating direct contractual liability;
- Concealing the endorsed version of the note from discovery while producing an unendorsed version;
- Failing to disclose that Fairway intended to immediately sell the loan in the secondary market rather than hold it;
- Fraudulently inducing Plaintiff to contract with Wells Fargo, a stranger, without Plaintiff's knowledge or consent;
- Engaging in systematic fraud to originate fraudulent loans for quick resale ("loan mill" practices).

85. These practices were material to Plaintiff's decision to enter into the loan transaction. Had Plaintiff been truthfully informed of the facts concealed by Fairway—particularly that she was being fraudulently bound to Wells Fargo—Plaintiff would not have entered into the transaction or would have negotiated on different terms.

86. Plaintiff, as a consumer, was caused to enter into the transaction by Fairway's unfair and deceptive trade practices.

87. Plaintiff has suffered injury in fact and damages as a result of Fairway's violations of the MCPA, as described in Section IV.H.

88. Fairway's conduct was willful and knowing, warranting enhancement of damages under Maryland Consumer Protection Act § 13-408.

**WHEREFORE, Plaintiff demands judgment requiring Fairway to:**

- Pay damages in an amount to be proven at trial;
- Pay enhanced damages or treble damages as allowed under Maryland law;
- Pay attorney's fees and costs as provided under Maryland Consumer Protection Act § 13-408;
- Such other relief as the Court deems just and proper.

## COUNT V: CIVIL RICO VIOLATION (18 U.S.C. § 1962(c))

89. Plaintiff incorporates all prior allegations as if fully set forth herein.

90. **The Enterprise:** Defendant Fairway, in association with Wells Fargo Bank (its warehouse lender and funding source), secondary market investors (Fannie Mae and Freddie Mac), and other loan investors, formed and operated an "association-in-fact enterprise" engaged in systematic loan origination, fraud, and resale. The enterprise constitutes an organization within the meaning of 18 U.S.C. § 1962.

91. **Racketeering Activity—Wire Fraud Predicate:** Fairway engaged in wire fraud in violation of 18 U.S.C. § 1343 by:

    - Devising and intending to devise a scheme to defraud Plaintiff of her money and property (her home and equity);
    - Making material misrepresentations regarding the identity of the lender, the source of loan funds, and the true contracting parties;
    - Using interstate wires (specifically, Wells Fargo's interstate wire transfer of funds originating from outside Maryland) to execute the fraudulent scheme;
    - Causing Plaintiff to sign loan documents and transfer the Property as collateral based on the fraudulent misrepresentations;
    - Obtaining a promissory note representing a $323,000 debt incurred through fraud and executed with an undisclosed principal.

92. **Racketeering Activity—Mail Fraud Predicate:** Fairway engaged in mail fraud in violation of 18 U.S.C. § 1341 by:

    - Using the mail and interstate carriers to send the fraudulent promissory note to secondary market investors;
    - Using the mail and interstate carriers to ship loan documents to Fannie Mae and Freddie Mac;
    - Using the mail and interstate carriers to facilitate the transfer of the fraudulent loan into the secondary market;
    - Each mailing and shipment was in furtherance of the fraudulent scheme to originate, conceal, and offload the fraudulent loan before accountability could be established.

93. **Pattern of Racketeering Activity:** The wire fraud and mail fraud predicate acts constitute a pattern of racketeering activity because they involve: - Continuity: The

fraudulent conduct was not an isolated incident but part of Fairway's systematic business model of originating fraudulent loans and immediately selling them in the secondary market; - Relationship: The predicate acts are related, as they involve the same fraudulent scheme targeting borrowers and deceiving investors; - Multiple Acts: Fairway committed multiple predicate acts (wire fraud and mail fraud) as part of the same scheme, including the wire transfer, concealment of the endorsed note, and shipment of the fraudulent note to investors.

94. **Effect on Interstate Commerce:** Fairway's racketeering activity directly affected interstate commerce by: - Conducting fraudulent transactions involving interstate wire transfers; - Using interstate mail and carriers to facilitate the scheme; - Participating in the secondary mortgage market, which is a national market directly affecting interstate commerce; - Deceiving government-sponsored enterprises (Fannie Mae and Freddie Mac) and institutional investors engaged in interstate commerce.

95. **Conduct of the Enterprise:** Fairway directly conducted the affairs of the enterprise through a pattern of predicate acts: - Originating fraudulent loans by misrepresenting the identity and role of the lender; - Fraudulently inducing borrowers to contract with undisclosed principals; - Using interstate wires to transfer fraudulent loan funds; - Concealing evidence of Fairway's liability by withholding the endorsed note; - Immediately shipping fraudulent loans to secondary market investors via interstate carriers; - Profiting from the scheme through origination fees, broker fees, and other compensation; - Repeating this scheme systematically with multiple loans as part of a "loan mill" operation.

96. **Injury to Plaintiff:** As a direct and proximate result of Fairway's racketeering activity, Plaintiff has been injured in her business or property by: - Losing her home and all equity therein due to the fraudulent loan; - Making mortgage payments on a debt incurred through fraud and signed with an undisclosed principal; - Suffering financial, emotional, and economic damages; - Losing housing security and stability.

97. Plaintiff is entitled to recover **treble damages** (three times actual damages) under 18 U.S.C. § 1964(c), as well as **attorney's fees and costs**, for Fairway's civil RICO violations.

**WHEREFORE, Plaintiff demands judgment requiring Fairway to:**

- Pay treble damages (three times the amount of actual damages proven at trial);
- Pay attorney's fees and costs as provided under 18 U.S.C. § 1964(c);

- Such other relief as the Court deems just and proper.

## COUNT VI: RESCISSION OF CONTRACT BASED ON FRAUD AND MUTUAL MISTAKE

98. Plaintiff incorporates all prior allegations as if fully set forth herein.

99. The promissory note and deed of trust are void ab initio due to: - Fraud in the inducement (fraudulent misrepresentation of lender identity and the true contracting parties); - Fraud preventing mutual assent (Plaintiff never consented to contract with Wells Fargo, the undisclosed principal); - Mutual mistake as to the identity of the contracting party (an essential term of any contract); - Lack of mutual assent and meeting of the minds.

100. Under Maryland law, a party may rescind a contract that was induced by fraud or formed under mutual mistake as to a material term. *Lloyd v. General Motors Corp., 916 A.2d 257 (Md. 2007)*. A contract induced by fraud as to the identity of an essential party is void ab initio, not merely voidable.

101. The promissory note and deed of trust represent a contract where the parties did not have a meeting of the minds. Plaintiff's mind never met with Wells Fargo's. Plaintiff intended to borrow from Fairway only. Wells Fargo's involvement as the actual contracting party was concealed through fraud.

102. Plaintiff seeks rescission of the promissory note and deed of trust, which are void ab initio. Plaintiff further seeks restitution of all payments made pursuant to these void instruments.

103. Because the promissory note and deed of trust are void ab initio, Fairway never had any valid interest to transfer, and any subsequent holder's interests are likewise void. Plaintiff seeks a declaration that the instruments are void ab initio and restitution of all payments made pursuant to these void contracts.

**WHEREFORE, Plaintiff demands:**

- A declaration that the promissory note dated September 20, 2021, is void ab initio;
- A declaration that the deed of trust dated September 20, 2021, is void ab initio;
- A declaration that no party has any valid lien or encumbrance against the Property based on these void instruments;
- Rescission of the promissory note and deed of trust;
- Return of all mortgage payments made pursuant to these void contracts, with interest;

- A declaration that all subsequent actions and transfers based on the void instruments are null and void;
- Such other relief as the Court deems just and proper.

## VI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Nadia Brown-Hyatt respectfully prays that this Court:**

A. Enter judgment in favor of Plaintiff and against Defendant Fairway on all Counts;

B. Award compensatory damages on Counts I, II, III, and IV in an amount to be proven at trial, including but not limited to:

- The value of the Property at the time of fraudulent origination;
- Loss of equity in the Property;
- Mortgage payments made on the fraudulent loan;
- Loss of housing security and stability;
- Emotional distress and mental anguish;
- Reputational harm and credit damage;
- Economic losses and financial instability;

C. Award punitive damages on Count I (Fraud in the Inducement) in an amount sufficient to punish Fairway's willful, wanton, and malicious conduct and to deter similar fraudulent schemes in the future;

D. Award enhanced or treble damages under the Maryland Consumer Protection Act (Count IV);

E. Award **treble damages** (three times actual damages) under the Civil RICO statute (Count V);

F. Declare that the promissory note and deed of trust are void ab initio (Count VI);

G. Declare that all transfers of the Property and all claims against Plaintiff based on the void promissory note and deed of trust are null and void (Count VI);

H. Order rescission of the promissory note and deed of trust (Count VI);

I. Order return of all mortgage payments made pursuant to the void contracts, with interest (Count VI);

J. Order Fairway to disgorge all fees, compensation, and benefits received in connection with the fraudulent loan;

K. Award pre-judgment and post-judgment interest as allowed by law on all monetary claims;

L. Award costs and attorney's fees on all Counts; and

M. Grant such other and further relief as the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## VIII. SIGNATURE

Respectfully submitted,

*/s/ Nadia Brown-Hyatt*

**NADIA BROWN-HYATT**
Pro Se Plaintiff
3707 Liberty Heights Avenue
Baltimore, MD 21215
Email: twahjah@gmail.com
Phone: (202) 412-1739
Date: December 11, 2025

## IX. VERIFICATION

I, **NADIA BROWN-HYATT**, declare under penalty of perjury under the laws of the United States that I have read the foregoing Complaint and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

*/s/ Nadia Brown-Hyatt*

**NADIA BROWN-HYATT**
Date: December 11, 2025

## X. EXHIBITS

Plaintiff attaches the following exhibits in support of this Complaint:

- **Exhibit A** – Copy of Promissory Note dated September 20, 2021 (unendorsed version), in the principal amount of $323,000, naming Fairway Independent Mortgage Corporation as Lender. This is the version Plaintiff signed at closing and the same unendorsed version Fairway deliberately produced in response to a subpoena to conceal the endorsed version (Exhibit D), which Plaintiff did not discover until years later when produced by a third party.

- **Exhibit B** – Maryland Net Proceeds Authorization (required under Maryland Real Property Law § 4-106), identifying Fairway as "Lender/Broker."

- **Exhibit C** – Fairway Funding Worksheet documenting Wells Fargo as "Funding Source/Warehouse Bank" providing 100% of loan funds ($319,319.07), with Fairway contributing $0.00.

- **Exhibit D** – Endorsed Copy of Promissory Note showing endorsement by Brielle Morgan, Fairway employee: "Pay to the order of Fairway Independent Mortgage Corporation."

- **Exhibit E** – Fairway Note Shipment Request dated September 24, 2021, showing immediate transfer to "Investor: Holding FNMA/FHLMC."

- **Exhibit F** – Plaintiff's letter to Fairway dated April 22, 2025, challenging the warehouse funding arrangement and demanding documentation, which Fairway ignored.

**END OF COMPLAINT**